**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone:  (302) 739-4397
Facsimile:  (302) 739-6179

Date Submitted:  January 14, 2021
Date Decided: March 19, 2021

Kenneth J. Nachbar, Esquire
Miranda N. Gilbert, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE  19801

Richard L. Renck, Esquire
Oderah C. Nwaeze, Esquire
Duane Morris LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE  19801

Re:  *Epic/Freedom, LLC, et al. v. Aveanna Healthcare, LLC, et al.*
C.A. No. 2020-0908-JRS

Dear Counsel:

This lawsuit arises out of obligations under a stock purchase agreement ("SPA") that memorialized the 2017 acquisition of Epic/Freedom, LLC ("Epic") by Aveanna Healthcare, LLC.[1]  Aveanna moves to dismiss the action in this Court for want of subject matter jurisdiction in favor of transferring the action to the Delaware Superior Court where related litigation between the parties is already underway.[2]

---

[1] Verified Compl. ("Compl.") (D.I. 1) ¶ 1.

[2] Mot. to Transfer Pl.'s Tax Refund Claim to the Delaware Superior Court (the "Motion") (D.I. 29).

For the reasons explained below, the Motion is granted subject to Epic's election to transfer the action to the Superior Court under 10 *Del. C.* § 1902 ("Section 1902").

## I. BACKGROUND

On August 6, 2020, Aveanna sued Epic in the Delaware Superior Court alleging breach of certain representations and warranties within the SPA, as well as fraud associated with those breaches.[3] Epic filed counterclaims in the Superior Court action on August 28, 2020. Counts I and II of Epic's counterclaims, substantively identical to the claims brought in this action, were dismissed by the Superior Court for lack of subject matter jurisdiction given that Epic sought equitable relief.[4]

On October 21, 2020, Epic initiated this action against Aveanna in which it sought advancement of its legal fees in the ongoing Delaware Superior Court action, specific performance of its rights under the SPA to control an audit of certain pre-

---

[3] Compl. ¶ 2.

[4] *Aveanna Healthcare, LLC (f/k/a BCPE Eagle Buyer LLC), v. Epic/Freedom, LLC, et al.*, N20C-08-055 AML CCLD (Del. Super Ct. Oct. 8, 2020) (TRANSCRIPT).

closing tax issues and to compel payment of a tax refund it alleges it is owed and Aveanna is wrongfully withholding in breach of the SPA.[5]

On November 5, 2020, during a hearing on a motion to expedite, the parties advised the Court that the advancement issue has been resolved and that the advancement claim would be dismissed. At the conclusion of the hearing, the Court determined the tax audit claim should be expedited but questioned whether the tax refund claim—a claim that appeared to be more a claim for damages than specific performance—needed to be adjudicated on an expedited schedule. The parties were asked to confer on that question and report back to the Court.[6]

Shortly after the hearing on the motion to expedite, Aveanna reported that it had agreed to turn over control of the tax audit to Epic, thereby mooting Epic's specific performance claim relating to the tax audit.[7] That left Epic's claim relating to the tax refund as the only claim remaining in this Court. As noted, Aveanna maintains that claim can be remedied by money damages and that it should be

---

[5] *See generally* Compl.

[6] (D.I. 22).

[7] (D.I. 50).

litigated alongside the other legal claims arising from the SPA that are before the Superior Court.

Section 6.9 of the SPA lays out the procedures for the return of the tax refund and provides that the refund is payable only to the extent it is based on tax positions "that are claimed with a minimum 'more likely than not' level of comfort."[8] According to Epic, the SPA also provides that the tax refund should be paid ten days after issuance and that Epic maintains the right to possess the refund while under audit.[9]  These provisions can only be enforced, says Epic, through a decree of specific performance.

## II. ANALYSIS

Aveanna invokes Section 1902 to argue this Court should declare it lacks subject matter jurisdiction and provide Epic the opportunity to transfer the action (with its sole remaining tax refund claim) to the Superior Court.[10]  Epic opposes the

---

[8] Compl., Ex. A ("SPA") § 6.9(f).

[9] *Id.*

[10] Section 1902 provides, in part: "No civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal. Such proceeding may be transferred to an appropriate court for hearing and determination,

Motion on two grounds: (1) money damages alone are inadequate to remedy the tax refund claim since the SPA requires payment within a particular timeframe and subject to certain conditions; and (2) Epic will otherwise suffer prejudice if the action is dismissed and transferred. Because I find neither argument persuasive, the Motion must be granted.

### A. This Court Lacks Subject Matter Jurisdiction Over the Tax Refund Claim

The Court of Chancery is a "court of limited jurisdiction"; it acquires jurisdiction in cases where there is a "request for an equitable remedy when there is no adequate remedy at law."[11] In determining whether a claim or remedy sounds in equity, the court must "focus upon the allegations of the complaint in light of what

---

provided that the party otherwise adversely affected, within 60 days after the order denying the jurisdiction of the first court has become final, files in that court a written election of transfer, discharges all costs accrued in the first court, and makes the usual deposit for costs in the second court."

[11] *Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *2 (Del. Ch. July 7, 2017) (citation omitted); *see also* Del. Const. Art. IV, § 7; 10 *Del. C.* §§ 341, 342 and 541. I note that neither party has addressed whether this Court has subject matter jurisdiction as a matter of statute by virtue of the fact that the contract at issue is a stock purchase agreement. *See* 8 *Del. C.* § 111. The Court, therefore, has not considered that question.

the plaintiff really seeks to gain by bringing his or her claim."[12] Among other things, the court looks to see whether an adequate remedy at law is available.[13] A remedy at law will be deemed "adequate" only where "an award of damages would be as complete, practical, and efficient to the ends of justice and its prompt administration as the equitable remedy. . . ."[14]

Both this court and the Superior Court have considered whether a demand for payment of a tax refund directed to one who wrongfully possesses those funds can be couched as a claim for specific performance. Most relevant here, in *Sun Life*, the Superior Court held that since the claim did not involve a need to compel a third-party to release funds, and instead involved a contractual obligation that the

---

[12] *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004).

[13] *Sun Life Assurance Co. of Canada - U.S. Operations Hldgs., Inc. v. Gp. One Thousand One, LLC*, 206 A.3d 261, 270 (Del. Super. Ct. 2019).

[14] *East Balt LLC v. East Balt US, LLC*, 2015 WL 3473384, at *2 (Del. Ch. May 28, 2015) (internal quotations omitted). Epic argues this Court must exercise subject matter jurisdiction because the SPA expressly provides a right to specific performance. Pl's Br. in Opp. to Mot. to Transfer (D.I. 40), at 6–7; SPA § 10.15. The fact the SPA recognizes the parties' right to seek specific performance in appropriate instances does not confer subject matter jurisdiction upon this court when it does not otherwise exist. *Sun Life*, 206 A.3d at 263 ("[T]he parties cannot contract for jurisdiction where it otherwise is unavailable.").

defendant was allegedly breaching, an award of money damages would be an adequate remedy if the defendant refused to turn over the tax refund in breach of the operative contract.[15]

In contrast, in some of the cases Epic relies upon, such as *East Balt LLC v. East Balt US*, the court lacked an adequate remedy at law because it first needed to compel an escrow agent to release funds before it could award those funds to the plaintiff.[16] Similarly, in *United BioSource v. Bracket*, also cited by Epic, this court found money damages inadequate where the tax refund at issue was held in a separate account, there was a proposed sale of the defendant that might make the account inaccessible (or less accessible) and that dynamic rendered collection of a damages award uncertain.[17]

---

[15] *Sun Life*, 206 A.3d at 270–71.

[16] *East Balt*, 2015 WL 3473384, at *3–4; *see also Haney v. Blackhawk Network Hldgs., Inc.*, 2017 WL 543347, at *4 (Del. Super. Ct. Feb. 8, 2017) (same).

[17] *United BioSource LLC v. Bracket Hldg. Corp.*, 2017 WL 2256618, at *4 (Del. Ch. May 23, 2017); *see also Sun Life*, 206 A.3d at 270–71 ("[T]he non-party subsidiary that received the tax refund at issue in *United BioSource* was holding the funds in a separate, interest-bearing account [and] . . . the defendant and non-party subsidiary's parent company were proposing to sell the non-party subsidiary, creating a danger that the plaintiff would be unable to collect a judgment.").

In this case, the court is not faced with a tax refund held in escrow by a third-party or a tax refund held in a separate account that may be unavailable to Aveanna such that collection of a damages award would be uncertain. Rather, the tax refund is held directly by Aveanna, which, if found in breach of the SPA, can be ordered to pay the amount of the tax refund in the form of damages to Epic.[18] In these circumstances, it is appropriate to ask, "if the Plaintiff[] prevail[s] on [its] contract claim . . . , and if the Plaintiff then recovers damages, what is left for equity to enforce?"[19]

According to Epic, the answer to this question is that equity must be invoked to compel Aveanna to pay the amount of the tax refund within the time specified in

---

[18] At oral argument, Epic observed that it was unsure whether Aveanna actually possessed the tax refund. Telephonic Oral Arg. on Defs.' Mot. to Transfer Pl.'s Tax Refund Claim (D.I. 51) ("MT Transfer Tr.") at 35. In response, after oral argument, Aveanna confirmed that it possessed the tax refund such that it could pay it to Epic directly as damages if Epic proves its breach of contract claim. Ltr. to the Court from William J. Burton ("Burton Letter") (D.I. 47).

[19] *Athene Life and Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376, at *8 (Del. Ch. July 31, 2019).

the SPA, namely within ten days.[20]  In other words, only a decree of specific performance can assure that Epic obtains the full benefit of its bargain.

Where "money damages will suffice to remedy any alleged breach to date, and declaratory relief will establish the proper [procedure]" for payment of damages, there is no need for equitable relief.[21]  Here, money damages in the amount of the tax refund less any set-offs required by Section 6.9(f) of the SPA as determined by the Superior Court, coupled with a declaration that Aveanna must pay within ten days of the judgment, will more than suffice to provide "as complete, practical, and efficient" a remedy as could be provided by this court in equity.[22]

Epic raised for the first time at oral argument a concern that Aveanna might not pay within ten days, even in the face of a declaration requiring it to do so, and

---

[20] SPA § 6.9(f).  I note that, while not explicitly addressed by the court in its opinion, the relevant tax refund provision in *Sun Life* provided that the tax refund must be paid within twenty days of its issuance, and yet the Superior Court was quite comfortable adjudicating the breach of contract claim to final judgment.  Complaint, *Sun Life Assurance Co. of Canada-U.S. Operations Hldgs, Inc. v. Gp. One Thousand One, LLC f/k/a Delaware Life Holdings, LLC*, N18C-07-173 AML CCLD (Del. Super. Ct. Jul. 23, 2018) (D.I. 1), Ex 1.

[21] *Alliance Compressors LLC v. Lennox Indus. Inc.*, 2020 WL 57897, at *5 (Del. Ch. Jan. 6, 2020).

[22] *East Balt*, 2015 WL 3473384, at *2.

that the Superior Court's lack of contempt power will leave that court with no "complete" enforcement mechanism by which to require Aveanna to pay. Even setting aside the fact that this issue was not properly joined in Epic's briefs, this court has previously noted that the powers of the Superior Court are more than sufficient to declare and then enforce parties' rights and obligations under contract:

> But I again fail to see how the Delaware Superior Court would be unable to provide an adequate remedy by defining the parties' rights and obligations. In addition to its ability to provide the parties with a legal remedy, the Superior Court also has power to "declare rights" as they relate to contractual interpretation. The Superior Court is authorized to grant declaratory relief, and to enforce its orders via its contempt power, or to award compensatory damages for violation of a judgment order—all sufficient remedies to address the type of potential harm that [the Plaintiff] anticipates.[23]

Thus, the Superior Court has authority to issue declarations with respect to any rights Epic asserts it has under the SPA, and that court has the ability to enforce such rights through its contempt powers. While it is true that "contempt of court is [not] the appropriate remedy for failure to satisfy a judgement for money," the claim Epic would assert to declare its rights under the SPA would not be remedied by a

---

[23] *Hillsboro Energy, LLC v. Secure Energy, Inc.*, 2008 WL 4561227, at *3 (Del. Ch. Oct. 3, 2008).

*money* judgment but by a *declaratory* judgment—a judgment that would be subject to the court's contempt powers.[24] Indeed, in one of the two cases Epic relies on to express its concerns regarding enforcement, *East Balt*, the court expressly contemplated the "potential enforcement of declaratory relief through a law court's contempt powers," but concluded the presence of a third-party as holder of the disputed funds would complicate the law court's ability to enforce that relief.[25] Again, no such complications will confront the Superior Court here.

To allay all concerns, Aveanna has represented to the Court and assured Epic that it will enter into a stipulation in the Superior Court that would require it to pay whatever damages the Superior Court may award within ten days of entry of the Superior Court's final judgment.[26] Conversely, Epic has provided no basis to

---

[24] *In re Mobilactive Media, LLC*, 2018 WL 5046282, at *3 (Del. Ch. June 28, 2018) (quoting *Vanderzeyde v. RDIS Corp.*, 1996 WL 33167791, at *1 (Del. Ch. June 6, 1996)).

[25] *East Balt*, 2015 WL 3473384, at *4 ("Because a damages award, or the potential enforcement of declaratory relief through a law court's contempt powers, would not be as 'certain, prompt, complete, or efficient' as the equitable remedies that Plaintiffs seek, this Court has subject matter jurisdiction over the Complaint.").

[26] Burton Letter; MT Transfer Tr. at 10.

suspect Aveanna would balk at its duties to abide by any orders of this court or the Delaware Superior Court.

## B. Transfer to the Superior Court Will Not Prejudice Epic

Finally, dismissal of this action in favor of Superior Court litigation in no way prejudices Epic. According to Epic, because it spent significant time and resources briefing the tax refund claim, including preparing and filing an expedited summary judgment motion, it would be prejudiced if this action were transferred to the Superior Court. I reject the argument for two reasons. First, the fact that Epic raced to file its summary judgment motion, accompanied by its opening brief, is hardly evidence of prejudice, especially given my observation at the hearing on the motion to expedite that, "I don't think Epic has met its burden to expedite that refund claim" and my suggestion more recently that the parties delay briefing Epic's motion for summary judgment until after this Motion was decided.[27] Second, and in any event, as I noted during the hearing on this Motion,[28] I have no reason to believe the

---

[27] Telephonic Oral Arg. on Pl.'s Mot. to Expedite (D.I. 39) at 25; (D.I. 35).

[28] MT Transfer Tr. at 41.

Superior Court would require the parties to brief the motion for summary judgment anew given that Section 1902 provides that, following transfer:

> All or part of the papers filed, or copies thereof, and a transcript of the entries, in the court where the proceeding was originally instituted shall be delivered in accordance with the rules or special orders of such court, by the prothonotary, clerk, or register of that court to the prothonotary, clerk or register of the court to which the proceeding is transferred. The latter court shall thereupon entertain such applications in the proceeding as conform to law and to the rules and practice of such court, and may by rule or special order provide for amendments in pleadings and for all other matters concerning the course of procedure for hearing and determining the cause as justice may require.[29]

Given that Epic's breach of contract claim is a legal claim that can be remedied with money damages and given that the Superior Court is already hearing claims arising under the same contract, there is simply no basis to split litigation of those claims in separate courts.[30]

---

[29] 10 *Del. C.* § 1902.

[30] *Helix Generation LLC v. Transcanada Facility USA, Inc.*, 2019 WL 2068659, at *2 (Del. Ch. May 10, 2019) (transferring breach of contract claim to the Superior Court).

### III.    CONCLUSION

For the foregoing reasons, the Motion to Transfer this action to the Delaware Superior Court is GRANTED.  As per Section 1902, Epic shall have sixty (60) days within which to file a written election of transfer, failing which this case will be dismissed with prejudice.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*